IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA


LISA M. HONEYCUTT,                    )
                                      )
                Plaintiff,            )
                                      )
        v.                            )        1:09CV912
                                      )
THE CITY OF ROCKINGHAM,               )
NORTH CAROLINA; R.B. LUGABIHL,        )
individually and in his              )
official capacity as an              )
Officer of the Rockingham            )
Police Department; and               )
BIG LOTS STORES, INC.,               )
                                      )
                Defendants.           )


## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

The instant matter comes before the undersigned United States

Magistrate Judge for a recommended ruling on Defendants' Motion for

Summary Judgment (Docket Entry 68).  (See Docket Entries dated

Nov. 30, 2009, Jan. 31, 2010, and Feb. 21, 2012 (designating case

as subject to handling pursuant to this Court's Amended Standing

Order No. 30, assigning case to undersigned Magistrate Judge, and

referring instant Motion to same, respectively).)[1]  For the reasons

---

[1]  Under said Standing Order, "[t]he magistrate judge to whom
the case is assigned will rule or make recommendations upon all
motions, both non-dispositive and dispositive."  M.D.N.C. Amended
Standing Order No. 30, ¶ 2; see also M.D.N.C. LR72.2 ("Duties and
cases may be assigned or referred to a Magistrate Judge . . . by
the clerk in compliance with standing orders . . . .").

that follow, the Court should grant said Motion in part and should deny it in part.

## I. Background

This case arises from Officer R.B. Lugabihl's alleged use of excessive force on Plaintiff in the performance of Officer Lugabihl's duties with the City of Rockingham (N.C.) Police Department. (See Docket Entry 25, ¶¶ 8-23.) Following Plaintiff's arrest for shoplifting at a Big Lots Stores, Inc. ("Big Lots") retail location, Officer Lugabihl transported Plaintiff to a North Carolina magistrate's office for the purpose of formally charging Plaintiff. (See Docket Entry 69 at 2; Docket Entry 73 at 3.) The parties' accounts of the encounter differ in critical respects. (Compare Docket Entry 69 at 2-7 with Docket Entry 73 at 2-5.)

In her deposition, Plaintiff described the relevant events as follows: Upon entering the magistrate's office after a brief wait in a waiting area outside, Officer Lugabihl told Plaintiff to sit down. (See Docket Entry 68-6 at 10-11.) Plaintiff, unable to see the chairs due to the relative positions of Plaintiff and Officer Lugabihl, asked Officer Lugabihl where she was to sit. (Id. at 11-12.) Officer Lugabihl then placed his hands "[o]n [Plaintiff's] shoulders" (id. at 13) and "shoved" Plaintiff down (id. at 12). Plaintiff acknowledges that Officer Lugabihl "thought he shoved [her] into a seat" (id.), but in fact Officer Lugabihl's actions caused Plaintiff to "straddl[e] the armrest on the chairs" (id.).

-2-

The force of the armrest injured Plaintiff in a manner that "stunned and shocked" her. (Id.)

Plaintiff's testimony continues: Officer Lugabihl then "moved like he was going to grab [Plaintiff's] head" (id.), whereupon Plaintiff "put up [her] right leg, kind of like to block" (id. at 14). Officer Lugabihl then "grabbed" Plaintiff's leg and used it to "pull[] [Plaintiff] onto the floor." (Id. at 12-13.) While Plaintiff was on the floor, Officer Lugabihl "grabbed the back of [Plaintiff's] britches and [her] handcuffs, and [] threw [her] head-first into the wall." (Id. at 15.) The force of Plaintiff's collision with the wall "knocked [Plaintiff] out." (Id. at 18.)

Officer Lugabihl gave conflicting testimony: First, he reported that Plaintiff was "uncooperative" during her arrest at Big Lots and "continued to be argumentative" while waiting outside the magistrate's office. (Docket Entry 68-3 at 48, 53.) Next, upon entering the magistrate's office, Officer Lugabihl "told [Plaintiff] to sit down several times," but Plaintiff "refused to do so." (Id. at 54.) Officer Lugabihl then "placed [his] hand on [Plaintiff's] shoulder and sat her down, at which point [Plaintiff] kicked [Officer Lugabihl] . . . in [his] abdomen and sprang back up at [him]." (Id.) The two then "struggled to the ground" (id.) and, as a result of this fall, Plaintiff sustained "a cut above her eye and began bleeding" (id. at 61). At no point, however, did Plaintiff "lose consciousness." (Id. at 121.)

-3-

After the events at the magistrate's office, the emergency medical service transported Plaintiff to the hospital, where she received treatment. (See Docket Entry 68-6 at 30-31.) Plaintiff's emergency room records note that she had an open wound on her forehead (described as "[s]imple: non-layered, no dirt in wound") and multiple contusions. (Docket Entry 68-15 at 2, 7.) It also appears that Plaintiff received CT scans and X-rays that revealed no further injuries. (See id. at 13-16.) Following this treatment, Officer Lugabihl transported Plaintiff to jail for further processing. (Docket Entry 68-6 at 35.)

As a result of the foregoing events, Plaintiff now pursues claims in this Court: (1) for excessive force under 42 U.S.C. § 1983 against both Officer Lugabihl (in his individual and official capacities) and the City of Rockingham; (2) for assault and battery under North Carolina law against Officer Lugabihl and the City of Rockingham; and (3) for negligent hiring and retention under North Carolina law against the City of Rockingham. (See

Docket Entry 73 at 2.)[2] Officer Lugabihl and the City of Rockingham (collectively, "Defendants") have moved for summary judgment on the grounds that "[t]he pleadings, discovery responses, depositions, affidavits, and other evidence contained in the [r]ecord establish that there are no genuine issues of material fact and that [D]efendants are entitled to prevail as a matter of law in this action as to all claims." (Docket Entry 68 at 1.)

---

[2] Plaintiff's Amended Complaint originally brought the following twelve claims: (1) "Deprivation of Civil Rights under 42 U.S.C. § 1983 to be Free from Excessive Force Against the Defendant Lugabihl in his Individual Capacity" (Docket Entry 25, ¶¶ 29-32); (2) "Deprivation of Civil Rights under 42 U.S.C. § 1983 to be Free from Malicious and Wrongful Prosecution Against the Defendant Lugabihl in his Individual Capacity" (id. ¶¶ 33-39); (3) "Deprivation of Civil Rights under 42 U.S.C. § 1983 Against Defendant City of Rockingham and Defendant Lugabihl in his Official Capacity" (id. ¶¶ 40-42); (4) "Assault Against Police Defendants" (id. ¶¶ 43-47); (5) "Battery Against Police Defendants" (id. ¶¶ 48-52); (6) "Negligent Hiring and Retention Against Defendant City of Rockingham" (id. ¶¶ 53-56); (7) "Malicious Prosecution Against Police Defendants" (id. ¶¶ 57-61); (8) "False Arrest Against Police Defendants" (id. ¶¶ 62-66); (9) "Intentional Infliction of Emotional Distress Against Police Defendants" (id. ¶¶ 67-72); (10) "Malicious Prosecution" against Big Lots (id. ¶¶ 73-78); (11) "Intentional Infliction of Emotional Distress" against Big Lots (id. ¶¶ 79-84); and (12) "Negligence" against Big Lots (id. ¶¶ 85-89). Plaintiff subsequently voluntarily dismissed all claims against Big Lots via a written stipulation of the parties. (See Docket Entry 55.) Plaintiff's Response to Defendants' Motion for Summary Judgment states that "Plaintiff has decided to voluntarily dismiss her Second, Seventh, Eighth and Ninth claims in order to narrow the issues in this case." (Docket Entry 73 at 2 n.1.) Because Defendants then already had filed an Answer to Plaintiff's Amended Complaint (see Docket Entry 28), Plaintiff may effect such a dismissal only by court order or written stipulation of all parties. See Fed. R. Civ. P. 41(a). The record does not reflect a written stipulation signed by Defendants. However, in light of Plaintiff's abandonment of her Second, Seventh, Eighth, and Ninth claims for relief against Officer Lugabihl and the City of Rockingham, the Court should dismiss those claims with prejudice.

## II. Summary Judgment Standard

"The [C]ourt shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Such a genuine dispute exists if the evidence presented could lead a reasonable fact-finder to return a verdict in favor of the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). In making this determination, the Court must view the evidence and any reasonable inferences therefrom in a light most favorable to the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

The party moving for summary judgment may discharge its burden by identifying an absence of evidence to support the non-moving party's case. See Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). The non-moving party then must "set forth specific facts showing that there is a *genuine issue for trial*." Matsushita Elec. Indus., 475 U.S. at 586-87 (citation omitted) (emphasis in original). In this regard, the non-moving party must convince the Court that evidence exists upon which a finder of fact could properly return a verdict in favor of the non-moving party. Anderson, 477 U.S. at 252 (citation omitted). See also Francis v. Booz, Allen & Hamilton, Inc., 452 F.3d 299, 308 (4th Cir. 2006) ("Mere unsupported speculation is not sufficient to defeat a

summary judgment motion if the undisputed evidence indicates that the other party should win as a matter of law.").

### III.  Excessive Force in Violation of 42 U.S.C. § 1983

#### A.  Officer Lugabihl in his Individual Capacity

Plaintiff claims that "[Officer] Lugabihl, acting under the color of state law and authority, used unreasonable and excessive force against [P]laintiff, and thereby denied [P]laintiff her clearly established constitutional rights to be free from unreasonable seizure and excessive and unnecessary force and due process of law, as guaranteed by the Fourth, Fifth and Fourteenth Amendments to the United States Constitution, in violation of 42 U.S.C. § 1983."  (Docket Entry 25, ¶ 30.)  Defendants argue that "the force used by [Officer] Lugabihl was objectively reasonable as a matter of law" (Docket Entry 69 at 13) and, accordingly, that "[Officer] Lugabihl is entitled to summary judgment - especially when qualified immunity is taken into account which has been asserted as a defense in this case" (id. at 15).

An analysis of Plaintiff's claim for violation of Section 1983 against Officer Lugabihl merges with the two-pronged determination of whether Officer Lugabihl enjoys qualified immunity.  "The government official will be granted immunity unless (1) the facts that a plaintiff has alleged or shown make out a violation of a constitutional right, and (2) the right at issue was clearly established at the time of the alleged misconduct."  Doe ex rel.

-7-

Johnson v. South Carolina Dep't of Soc. Servs., 597 F.3d 163, 170 (4th Cir. 2010). The Court may decide "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances of the particular case at hand." Pearson v. Callahan, 555 U.S. 223, 236 (2009).

### i. Violation of a Constitutional Right

All constitutional claims of excessive force are analyzed under the Fourth Amendment. Graham v. Connor, 490 U.S. 386, 395-96 (1989). To succeed, a plaintiff must show that the defendant "inflicted unnecessary and wanton pain and suffering." Whitley v. Albers, 475 U.S. 312, 320 (1986). This determination involves utilization of an objective standard, Graham, 490 U.S. at 395-96, to make a "careful balancing of the 'nature and quality of the intrusion on the individual's Fourth Amendment interests,'" id. at 396 (quoting Tennessee v. Garner, 471 U.S. 1, 8 (1985)).

"[P]roper application [of this standard] requires careful attention to the facts and circumstances of each particular case, including the severity of the crime [as to which the plaintiff's detention was sought], whether the suspect poses an immediate threat to the safety of the officers or others, and whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight." Id. "The extent of the plaintiff's injury is also a relevant consideration." Jones v. Buchanan, 325 F.3d 520, 527 (4th Cir. 2003) (citations omitted). Although on a motion for summary

-8-

judgment, the Court must view the evidence and any reasonable inferences therefrom in a light most favorable to the non-moving party, <u>Matsushita Elec. Indus.</u>, 475 U.S. at 587, in an excessive force action against a law enforcement officer, "the reasonableness of [the officer's] response must be gauged against the reasonableness of [his] perceptions, not against what may later be found to have actually taken place." <u>Gooden v. Howard Cnty., Md.</u>, 954 F.2d 960, 965 (4th Cir. 1992).

In the instant case, Defendants assert that "[t]he Record establishes that the limited force used by Officer Lugabihl was objectively reasonable." (<u>See</u> Docket Entry 75 at 1.) Notably, however, Defendants do not contend that Plaintiff's account, if accepted as true, would amount to a reasonable use of force. (<u>See</u> Docket Entry 69 at 12-15.)[3] Rather, Defendants emphasize that "[P]laintiff appears to have perceived the events of her arrest different from *everyone else at the scene*" (Docket Entry 75 at 2 (italics in original)) and go on to contend that: "The issue in this case is not *how* the incident occurred but whether [Officer] Lugabihl's perceptions and responses were objectively reasonable –

_____

[3] For example, Defendants argue that, "[g]iven [P]laintiff's conduct, even if [P]laintiff was taken to the ground, [Officer] Lugabihl would have been justified in doing so." (Docket Entry 69 at 13-14.) However, Defendants do not contend that the circumstances Officer Lugabihl perceived would have justified the acts of lifting Plaintiff from her position on the ground and throwing her into a wall in the manner Plaintiff's testimony described. (<u>See</u> <u>id.</u>)

-9-

which they were as a matter of law.  The fact that [P]laintiff may have perceived the facts differently from all others does not create an issue of fact."  (Id. at 2 (italics in original).)

Plaintiff, in contrast, argues that "[t]here are genuine issues of material fact that should be determined by the jury. Specifically, [P]laintiff's account of her treatment by [Officer] Lugabihl . . . varies widely from [Officer] Lugabihl's."  (Docket Entry 73 at 10.)[4]  The Court should find that the critically different accounts of the events that occurred in the magistrate's office preclude the Court from making a determination as to the objective reasonableness of Officer Lugabihl's actions as a matter of law and thus render the instant claim inappropriate for disposition via summary judgment.

In particular, the parties' conflicting accounts do not illustrate a mere difference in perspective of the sort Defendants

_____

[4] Plaintiff submitted an Affidavit of Plaintiff (Docket Entry 71-1) on which she relies in part in her Response to Defendants' Motion for Summary Judgment (Docket Entry 73).  In addressing Defendants' instant Motion, the Court need not accept as true any statements in Plaintiff's affidavit that contradict her earlier deposition testimony (Docket Entries 68-5, 68-6). See, e.g., Erwin v. United States, 591 F.3d 313, 325 n.7 (4th Cir. 2010); Hernandez v. Trawler Miss Vertie Mae, Inc., 187 F.3d 432, 438 (4th Cir. 1999); see also Barwick v. Celotex Corp., 736 F.2d 946, 960 (4th Cir. 1984) ("If a party who has been examined at length on a deposition could raise an issue of fact simply by submitting an affidavit contradicting his prior testimony, this would greatly diminish the utility of summary judgment for screening out sham issues of fact.  A genuine issue of material fact is not created where the only issue of fact is to determine which of the two conflicting versions of the plaintiff's testimony is correct." (internal quotation marks and citations omitted)).

contend.  The undersigned recognizes that whether Plaintiff "put up
[her] right leg, kind of like to block" (Docket Entry 68-6 at 14)
or "kicked [Officer Lugabihl] . . . in [his] abdomen" (Docket Entry
68-3 at 54) represents a matter as to which the Court properly
could accept Officer Lugabihl's perception in measuring whether, as
a matter of law, he used a reasonable amount of force.  See, e.g.,
Saucier v. Katz, 533 U.S. 194, 205 (2001) ("If an officer
reasonably, but mistakenly, believed that a suspect was likely to
fight back, for instance, the officer would be justified in using
more force that in fact was needed.").  However, whether the force
applied by Officer Lugabihl consisted only of Plaintiff and Officer
Lugabihl "tripping over [a] chair" (Docket Entry 68-3 at 54), or
also of Officer Lugabihl picking Plaintiff back up off the ground
by the back of her clothing and her handcuffs and throwing her into
a wall (Docket Entry 68-6 at 15) represents a material factual
dispute contingent on witness credibility that the Court cannot
resolve on motion for summary judgment.  See Reeves v. Sanderson
Plumbing Prods., Inc., 530 U.S. 133, 150 (2000) (providing that in
deciding motion for summary judgment, "the court . . . may not make
credibility determinations or weigh the evidence").

    As another district court in the Fourth Circuit examining
similarly conflicting evidence recently summarized:

    [W]hen the Plaintiff's "excessive force claim turns on
    which of two conflicting stories best captures what
    happened on the street," summary judgment is not

permitted. For instance, . . . "[w]hen a plaintiff proffers evidence that the official subdued her with a chokehold even though she complied at all times with his orders, while the official proffers evidence that he used only stern words, a trial must be had." The case at hand turns on which of two conflicting stories rings true to the jury. A trial must be had.

Johnson v. Rankin, ____ F. Supp. 2d ____, ___, 2012 WL 527369, at *6 (E.D. Va. 2012) (quoting Saucier, 533 U.S. at 216 (Ginsburg, J., concurring in the judgment)).

Further, although "[m]ere unsupported speculation is not sufficient to defeat a summary judgment motion," Booz, Allen, 452 F.3d 299, 308, Plaintiff has provided evidence in the form of her sworn testimony (see Docket Entries 68-5, 68-6), as well as emergency room records and photographs corroborating that an injury occurred (see Docket Entries 68-15, 72). Defendants, through their briefing, seemingly assert an ability to discredit Plaintiff's statements through other witness testimony (see Docket Entry 75 at 3), as well as possible inconsistencies in Plaintiff's account, specifically dealing with her Big Lots arrest and criminal history (see id. at 1, 2 n.1). They further suggest Plaintiff's injuries are equally or perhaps more consistent with Officer Lugabihl's account of the events. (See id. at 5 n.3.) These assertions, however, merely confirm that the issue present in the instant case represents a factual question that demands the weighing of evidence. Although Defendants assert that "testimony which defies logic and common sense can be deemed incredible as a matter of law"

-12-

(see Docket Entry 75 at 2 (citing U.S. v. Lindell, 881 F.2d 1313, 1322 (5th Cir. 1989) and Tapia v. Tansy, 926 F.2d 1554, 1562 (10th Cir. 1991)), Plaintiff's instant recounting of the events at issue does not rise to that extreme level.

Defendants also point the Court to the decision in Brown v. Gilmore, 278 F.3d 362 (4th Cir. 2002), to support their contention that the Court may grant summary judgment "[d]espite different perceptions as to what had occurred." (Docket Entry 69 at 14-15.) Brown, however, did not involve the type of evidentiary conflict over the amount of force used that this case presents.

In Brown, the plaintiff brought an excessive force claim against an officer based on injuries sustained during her arrest. Brown, 278 F.3d at 365. Although the court noted that the parties had differing perspectives about what transpired, critically, the essential difference in perspective concerned whether the plaintiff complied with the officers' orders or attempted to resist when the officer applied force. Id. at 365-66. Even under the facts as alleged by the plaintiff, the court determined that the officer exercised only a "minimal level of force." Id. at 369. The court then accepted the officer's reasonable perception that the plaintiff was resisting arrest and used that perception against which to measure the officer's subsequent actions. Id. at 369-70.

In this case, by contrast, even if the Court accepted Officer Lugabihl's perception that Plaintiff resisted and kicked Officer

-13-

Lugabihl, the material disputed question of what force Officer Lugabihl used in response remains. Because resolution of that issue requires credibility-based fact-finding, a genuine issue of material fact exists as to whether Officer Lugabihl violated Plaintiff's constitutional rights.

### ii. Established Constitutional Right at the Time of Injury

Because of Officer Lugabihl's assertion of qualified immunity, the Court also must consider whether the constitutional violation as to which Plaintiff has raised a material question of fact involved a constitutional right that was clearly established at the time of her injury. See Pearson, 555 U.S. at 231. Qualified immunity "protects officers who commit Constitutional violations but who, in light of clearly established law, could reasonably believe that their actions were lawful." Henry v. Purnell, 652 F.3d 524, 532 (4th Cir. 2011). It "protects all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986). "The standard is again one of objective reasonableness: the 'salient question' is whether 'the state of the law' at the time of the events at issue gave the officer 'fair warning' that his alleged treatment of the plaintiff was unconstitutional." Jones, 325 F.3d at 531 (quoting Hope v. Pelzer, 536 U.S. 730, 731 (2002)).

For reasons discussed above, a material fact question exists as to whether Officer Lugabihl used excessive force. Specifically,

-14-

Plaintiff contends she was handcuffed with her hands behind her back on the ground and posed no threat to Officer Lugabihl when he lifted her from the ground and threw her into the wall. (Docket Entry 68-6 at 18.)  Although Officer Lugabihl disputes that account, he has failed to argue that "'the state of the law' at the time of the events at issue' [did not give him] 'fair warning' that [such] treatment of [an arrestee] was unconstitutional," Jones, 325 F.3d at 531 (quoting Hope, 536 U.S. at 731). (See Docket Entry 69 at 12-15.)  Under these circumstances, the Court should decline to enter summary judgment for Officer Lugabihl notwithstanding his assertion of a qualified immunity defense.

B. City of Rockingham/Officer Lugabihl in his Official Capacity

Plaintiff has failed to create a genuine issue of material fact with respect to her claims under 42 U.S.C. § 1983 against the City of Rockingham and Officer Lugabihl in his official capacity. "A municipality cannot be held liable under Section 1983 unless action pursuant to official municipal policy of some nature caused [the] constitutional tort." Monell v. Department of Soc. Servs., 436 U.S. 658, 691 (1978).  To establish liability against a municipality under 42 U.S.C. § 1983, a plaintiff must show that "the constitutional injury is proximately caused by a written policy or ordinance, or by a widespread practice that is 'so permanent and well settled as to constitute a 'custom or usage' with the force of law.'" McFadyen v. Duke Univ., 786 F. Supp. 2d

-15-

887, 954 (M.D.N.C. 2011) (quoting <u>City of St. Louis v. Praprotnik</u>, 485 U.S. 112, 127 (1988)). The record contains no such evidence.[5]

According to Plaintiff, "[t]he City of Rockingham, through its police department, was responsible for the hiring, training, supervision, discipline, and retention of its officers; and was further responsible for enforcing policies, regulations and rules to insure that the police officers obeyed the laws of the State of North Carolina and of the United States." (Docket Entry 73 at 5.) Plaintiff goes on to assert: "The abuse to which [P]laintiff was subjected was consistent with a custom, policy, pattern and practice of the City and its police officers to apply and condone the use of excessive and unreasonable force in the performance of their duties, and the City [of Rockingham] has been deliberately indifferent to repeated violations of the constitutional rights of individuals, including [P]laintiff." (<u>Id.</u> at 5-6.)

--------

[5] This deficiency also forecloses any official-capacity claim against Officer Lugabihl because "[s]uch a claim, in effect is against the governmental entity employing [him]." <u>Nivens v. Gilchrist</u>, 444 F.3d 237, 249 (4th Cir. 2006) (citing <u>Kentucky v. Graham</u>, 473 U.S. 159, 166 (1985)); <u>accord</u> <u>Gray v. Lewis</u>, 51 F.3d 426, 431 (4th Cir. 1995). "[Because] the claims against the officers in their official capacities are claims against the entities for which the officers were acting . . ., it must be shown that the actions of the officers were unconstitutional <u>and</u> were taken pursuant to a custom or policy of the entity." <u>Giancola v. State of W. Va. Dep't of Pub. Safety</u>, 830 F.2d 547, 550 (4th Cir. 1987) (citing <u>Monell</u>, 436 U.S. at 690-92) (emphasis added); <u>accord</u> <u>Gordon v. Kidd</u>, 971 F.2d 1087, 1097 (4th Cir. 1992). Accordingly, Plaintiff's claim against Officer Lugabihl in his official capacity is duplicative of Plaintiff's claim against the City of Rockingham.

Plaintiff thus appears to suggest that the Court separately must analyze whether the City of Rockingham exhibited deliberate indifference to an obvious risk of constitutional violations and whether a policy or custom of the City of Rockingham caused the alleged violations. Specifically, Plaintiff states:

> Since *Monell*, the Supreme Court has amplified on the principle that under § 1983 an employer is responsible for Constitutional violations which arise from policy, custom or practice. Liability can <u>also</u> be founded upon the employment of an officer in deliberate indifference to an obvious risk that the officer would violate plaintiff's constitutional rights.

(Docket Entry 73 at 13 (emphasis added) (internal citations omitted) (citing <u>City of Canton v. Harris</u>, 489 U.S. 378 (1989) and <u>Board of Cnty. Comm'rs of Bryan Cnty. v. Brown</u>, 520 U.S. 397 (1997)).) However, said analysis exists under the framework provided by <u>Monell</u> rather than in addition to it.

In <u>City of Canton</u>, which dealt with an allegedly inadequate training program, the Supreme Court stated:

> In contrast to the Court of Appeals' overly broad rule, this "deliberate indifference" standard is most consistent with the rule of <u>Monell</u> that a city is not liable under § 1983 unless a municipal "policy" or "custom" is the moving force behind the constitutional violation. Only where a failure to train reflects a "deliberate" or "conscious" choice by the municipality can the failure be properly thought of as an actionable city "policy." <u>Monell</u> will not be satisfied by a mere allegation that a training program represents a policy for which the city is responsible.

<u>City of Canton</u>, 489 U.S. at 379 (internal citation omitted).

-17-

Similarly, in <u>Board of Cnty. Comm'rs</u>, which concerned alleged inadequate screening in the hiring of a local government employee, the Supreme Court stated:

> Claims such as the present, which do not involve an allegation that the municipal action itself violated federal law or directed or authorized the deprivation of federal rights, require application of rigorous culpability and causation standards in order to ensure that the municipality is not held liable solely for its employees' actions. In [<u>City of Canton</u>], for example, the Court held that a plaintiff seeking to establish municipal liability on the theory that a facially lawful municipal action - there, an allegedly inadequate training program - has led an employee to violate a plaintiff's rights must demonstrate that the municipal action was not simply negligent, but was taken with "deliberate indifference" as to its known or obvious consequences.

<u>Board of Cnty. Comm'rs</u>, 520 U.S. at 98.

Accordingly, in addressing Plaintiff's claims, the Court must ask whether the City of Rockingham's actions "reflect[ed] a 'deliberate' or 'conscious' choice by the municipality," <u>City of Canton</u>, 489 U.S. at 379, so as to qualify as an official policy or custom of the City of Rockingham. Plaintiff's evidentiary offerings on this point fall short. Specifically, Plaintiff's Response Brief relies on the following:

(1) eight months prior to the decision by the Chief of Police of the City of Rockingham to hire him, Officer Lugabihl was involved in an altercation with a bartender and was charged with assault (Docket Entry 73 at 15);

-18-

(2)    after the incident involving Plaintiff, Officer Lugabihl was disciplined for failure to fill out a use-of-force form for deploying a taser on a trespasser and was subsequently suspended for "unbecoming conduct" (id.);

(3)    in a separate incident, a mother complained about the manner in which Officer Lugabihl returned her son home (again after the incident in question involving Plaintiff) (id. at 15-16; see also Docket Entry 71-5);

(4)    Officer Lugabihl's response to a deposition question asking whether someone had been injured during his use of force, in which he stated:  "'Well, sir, you're asking me questions as a – you know, as yourself, as a role as a lawyer, you most likely wear a tie to work every day.  You're asking me, essentially, how many ties have you worn to work every day?  Can you tell me about the ties you've worn to work every day?  You're asking questions that as just a part of my job every day, day in and day out, these incidents happen . . . .'"  (Docket Entry 73 at 16 (quoting Docket Entry 68-3 at 31-32));

(5)    Officer Lugabihl's response to a deposition question as to whether anyone had gone to the hospital as a result of force he inflicted, in which he stated:  "'There would be more incidents than I could detail or recall.  It's been in the normal scope of my employment as a police officer; nothing outside of that scope or

-19-

outside of my qualified immunity.'" (Id. (quoting Docket Entry 68-3 at 32)); and

(6) Plaintiff's expert indicated, based on some of Officer Lugabihl's responses to deposition questions, a problem could exist in the larger department (id.).

The undersigned notes initially that, "[n]ormally, actions taken after the incident cannot be used to prove the existence and knowledge of a policy at the time of the incident because, from that fact, there is no way of knowing whether the policy was already in existence or newly arising." Chalmers v. Petty, 136 F.R.D. 399, 404-405 (M.D.N.C. 1991). No reason exists to depart from that standard in this case. Any incidents regarding the application of force by Officer Lugabihl which occurred after his encounter with Plaintiff have no bearing on an analysis of whether the harm caused to Plaintiff resulted from a custom or policy of the City of Rockingham in place when that encounter occurred.

Similarly, Officer Lugabihl's deposition testimony regarding his use of force on the job does not support a constitutional claim against the City of Rockingham. "Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." Graham, 490 U.S. at 396. Accordingly, Officer Lugabihl's indications that he has applied force during the course of his

-20-

duties that may have injured individuals or even resulted in hospital admissions does not support any inference that he previously used excessive force, particularly given the absence of any information regarding the actions of the individuals against whom he applied such force.

Furthermore, the statement of Plaintiff's expert that, "'based on some of Lugabihl's remarks to what he felt force was, or the legality of using force by an officer, if that was the general understanding of the agency, then in my opinion that would be a problem'" (Docket Entry 73 at 16 (quoting Docket Entry 68-7 at 113)) serves to highlight the deficiency of Plaintiff's argument on this point rather than to support it. This testimony does not address whether any perception about any particular use of force represented "the general understanding of the agency" or whether any such "general understanding of the agency" arose from an official policy or custom of the City of Rockingham.

Finally, the City of Rockingham's decision to hire Officer Lugabihl despite the barroom fight constitutes inadequate proof of a custom or policy of the City of Rockingham that would support Monell liability in this case. Plaintiff has offered no basis for any inference that the City of Rockingham's hiring decision "was taken with 'deliberate indifference' as to its known or obvious consequences," Board of Cnty. Comm'rs, 520 U.S. at 398 (quoting City of Canton, 489 U.S. at 388). To the contrary, the uncontested

-21-

evidence shows that, before hiring Officer Lugabihl, the City of Rockingham fully investigated that prior incident and thoroughly assessed his fitness, including by way of a psychological evaluation. (See Docket Entry 68-8 at 62-69.)

On a similar claim of deficient screening in the hiring of a deputy, the Supreme Court noted:

> [I]t must be asked whether a full review of [the deputy's] record reveals that [the sheriff] should have concluded that [the deputy]'s use of excessive force would be a plainly obvious consequence of his decision to hire [the deputy]. Respondent's showing on this point was inadequate because the primary infractions on which she relies to prove [the deputy]'s propensity for violence arose from a single college fight.

Board of Cnty. Comm'rs, 520 U.S. at 399. Similarly, here, Plaintiff relies on a single incident without offering any evidence that any use of excessive force would have appeared as "a plainly obvious consequence" of the decision to hire Officer Lugabihl. Nor has Plaintiff shown that any deficiency in the process that led to Officer Lugabihl's hiring represented part of a "widespread practice," McFadyen, 786 F. Supp. 2d at 954, based on this single incident. See W.E.T. v. Mitchell, No. 1:06CV487, 2007 WL 2712924, at * 11 (M.D.N.C. Sept. 14, 2007) (unpublished) (Beaty, C.J.) ("Because Plaintiffs cannot establish a policy or custom of the [Durham Public Schools] Board [of Education] . . . through their allegations of a single instance of unconstitutional activity, Plaintiffs' claim also fails in this regard.").

-22-

In sum, Plaintiff has offered insufficient evidence that "the constitutional injury [of which she complains was] proximately caused by a written policy or ordinance, or by a widespread practice that is 'so permanent and well settled as to constitute a 'custom or usage' with the force of law.'" McFadyen, 786 F. Supp. 2d at 954 (quoting City of St. Louis, 485 U.S. at 127). The Court thus should grant Defendants' Motion for Summary Judgment with respect to Plaintiff's Section 1983 claim against the City of Rockingham and her duplicative Section 1983 claim against Officer Lugabihl in his official capacity.

## IV. State Law Claims for Assault and Battery

### A. Officer Lugabihl

In addition, Plaintiff seeks recovery for assault and battery against Officer Lugabihl under North Carolina law, which provides that "'a civil action for damages for assault and battery is available at common law against one who, for the accomplishment of a legitimate purpose, such as justifiable arrest, uses force which is excessive under the given circumstances.'" Thomas v. Sellers, 142 N.C. App. 310, 315, 542 S.E.2d 283, 287 (2001) (quoting Myrick v. Cooley, 91 N.C. App. 209, 215, 371 S.E.2d 492, 496 (1988)).[6]

---

[6] In addressing Plaintiff's claims under North Carolina law, this Court "must rule as the North Carolina courts would, treating decisions of the Supreme Court of North Carolina as binding, and departing from an intermediate [North Carolina appellate] court's fully reasoned holding as to state law only if convinced that [North Carolina's] highest court would not follow that holding." Iodice v. United States, 289 F.3d 270, 275 (4th Cir. 2002) (internal brackets and quotation marks omitted).

-23-

North Carolina law, however, affords public officers certain protection from such claims under the doctrine of public official immunity, which declares that "a public officer who exercises his judgment and discretion within the scope of his official authority, without malice or corruption, is protected from liability." McCarn v. Beach, 128 N.C. App. 435, 437, 496 S.E.2d 402, 404 (1998) (citation omitted); see also Grad v. Kaasa, 312 N.C. 310, 313, 321 S.E.2d 888, 890 (1984) ("A defendant acts with malice when he wantonly does that which a man of reasonable intelligence would know to be contrary to his duty and which he intends to be prejudicial or injurious to another.").

Defendants contend that "[n]o evidence of malice or corruption exists. No argument can be made that [Officer] Lugabihl knew or should have known that he was violating [P]laintiff's rights given her conduct on the date in question." (Docket Entry 75 at 6.) Defendants' argument again appears to rely on Officer Lugabihl's version of events, rather than on any contention that, if the jury accepted Plaintiff's testimony as true (i.e., that, after successfully taking Plaintiff to the ground, Officer Lugabihl lifted Plaintiff from the floor by "the back of [her] britches and [her] handcuffs, and [] threw [her] head-first into the wall" (Docket Entry 68-6 at 15)), the jury could not reasonably conclude that Officer Lugabihl "d[id] that which a man of reasonable intelligence would know to be contrary to his duty and which he

-24-

intends to be prejudicial or injurious to another," Grad, 312 N.C. at 313, 321 S.E.2d at 890. (See Docket Entry 75 at 6.)

Under these circumstances, the Court should conclude that the disposition of Plaintiff's assault and battery claims (and Officer Lugabihl's public official defense thereto) requires a determination of credibility and/or weighing of the evidence which cannot occur at the summary judgment stage. See Reeves, 530 U.S. at 150. In effect, the analysis of Plaintiff's claims for assault and battery under North Carolina law mirrors the foregoing analysis of Plaintiff's Section 1983 excessive force claim against Officer Lugabihl in his individual capacity. See, e.g., Rowland v. Perry, 41 F.3d 167, 174 (4th Cir. 1994) ("The parallel state law claim of assault and battery is subsumed within the federal excessive force claim and so goes forward as well."). Accordingly, Plaintiff has created a genuine issue of material fact as to her assault and battery claim(s) against Officer Lugabihl, such that the Court should deny Defendants' summary judgment motion as to said claims.

## B. The City of Rockingham

Plaintiff also has asserted claims for assault and battery against the City of Rockingham based on principles of respondeat superior. (See Docket Entry 25, ¶¶ 43-52.) "The general rule in North Carolina is that a municipality is 'immune from torts committed by an employee carrying out a governmental function.'" Turner v. City of Greenville, 197 N.C. App. 562, 566, 677 S.E.2d

480, 483 (2009) (quoting Schmidt v. Breeden, 134 N.C. App. 248, 252, 517 S.E.2d 171, 174 (1999)). However, under N.C. Gen. Stat. § 160A-485(a), "[a]ny city is authorized to waive its immunity to the extent it has purchased liability insurance." N.C. Gen. Stat. 160A-485(a); see also Schlossberg v. Goins, 141 N.C. App. 436, 439-45, 540 S.E.2d 49, 52-55 (2000) (affirming denial of municipality's summary judgment motion based on theory of governmental immunity from claims of assault, battery, false imprisonment, false arrest and malicious prosecution to extent of coverage under risk pool and insurance policy). Said statute further states: "Participation in a local government risk pool pursuant to Article 23 of General Statute Chapter 58 shall be deemed to be the purchase of insurance for the purposes of this section." N.C. Gen. Stat. § 160A-485(a).

Plaintiff has alleged that the City of Rockingham waived its immunity under N.C. Gen. Stat. § 160A-485 through participation in a risk pool. (See Docket Entry 25, ¶ 28.) In its Answer, the City of Rockingham stated:

> It is admitted that the City of Rockingham participates in a risk pool that provides coverage for certain claims, acts, and omissions. It is further admitted that the City [of Rockingham] has waived its sovereign/ governmental immunity for certain acts and omissions, but only to the extent of actual coverage under any such risk pool policy or policies pursuant to North Carolina law. It is further admitted that the City maintains its sovereign/governmental immunity to the extent of any deductible, exclusion, lack of policy coverage, or limit of coverage under any such policy or policies of insurance.

-26-

(Docket Entry 28, ¶ 28.)

Neither party addressed this issue at any length in their briefing on summary judgment. (See Docket Entries 68, 69, 73, 75.) Indeed, the only mention of governmental immunity appears in Plaintiff's Response Brief, which repeats the general proposition: "[A] city may 'waive its governmental immunity by purchasing liability insurance or by participating in a local governmental risk pool under Article 23 of Chapter 58 of the General Statutes.'" (Docket Entry 73 at 19 (quoting Schlossberg, 141 N.C. App. at 440).) Accordingly, the only evidence before the Court appears to reflect the City of Rockingham's judicial admission of its participation in a risk pool qualifying under N.C. Gen. Stat. § 160A-485(a) to waive its immunity. In the absence of any evidence or argument that the scope of said coverage does not extend to the claims at issue, the Court should decline to enter summary judgment based on the issue of governmental immunity.

Furthermore, unlike a claim brought under Section 1983, claims for assault and battery do not constitute constitutional torts, as to which the doctrine of respondeat superior would lack application. See W.E.T., 2007 WL 2712924, at **10, 13 (finding, in motion to dismiss context, that state law tort claims against local government could proceed on theory of respondeat superior, while simultaneously ruling that case could not proceed against said entity under Section 1983); see also Fowler v. Valencourt, 108 N.C.

-27-

App. 106, 113, 423 S.E.2d 785, 789 (1992) ("[The] City of Salisbury can be held liable for any tort committed by [its employee] during the course and scope of his employment, to the extent that the City has waived governmental immunity by purchasing liability insurance." (internal citations omitted)), rev'd in part on other grounds, 334 N.C. 345, 435 S.E.2d 530 (1993).

In sum, given that the City of Rockingham has admitted participation in a risk pool that would waive its governmental immunity to some extent and given that Plaintiff has raised a genuine issue of material fact with respect to her claims against Officer Lugabihl for assault and battery, no basis exists to grant summary judgment to the City of Rockingham on said claims.

## V. Negligent Hiring and Retention

Plaintiff pursues a claim against the City of Rockingham for negligently hiring and retaining Officer Lugabihl. (See Docket Entry 73 at 2.) "In North Carolina, a plaintiff must prove two elements to hold an employer liable for negligent supervision or retention: (1) that an incompetent employee committed a tortious act resulting in injury to the plaintiff; and (2) that prior to the act, the employer knew or had reason to know of the employee's incompetency." Smith v. First Union Nat'l Bank, 202 F.3d 234, 249-50 (4th Cir. 2000) (citing Hogan v. Forsyth Country Club Co., 79 N.C. App. 483, 495, 340 S.E.2d 116, 124 (1986)). Plaintiff has failed to offer sufficient evidence of an injury resulting from any

-28-

incompetency of Officer Lugabihl as to which the City of Rockingham then had actual or constructive notice. As previously discussed, other than the barroom fight, the incidents involving Officer Lugabihl identified by Plaintiff as showing some propensity for assaultive conduct all occurred _after_ Plaintiff's interaction with Officer Lugabihl. Those matters, therefore, failed to provide any notice to the City of Rockingham of any unfitness on the part of Officer Lugabihl prior to the time of Plaintiff's instant injuries.

Nor does the assault in the bar suffice. To show that the City of Rockingham acted negligently in hiring and/or retaining Officer Lugabihl, Plaintiff would need to demonstrate not only that Officer Lugabihl committed an aggressive act before his encounter with Plaintiff, but that Officer Lugabihl had a propensity for aggressive actions indicating that he likely would commit assaults in the future and that the City of Rockingham knew or should have known of the same. Plaintiff has cited no authority that a single prior incident of the sort that occurred before Officer Lugabihl's hiring could support such inferences. (See Docket Entry 73 at 18.) Moreover, to hold that a single incident of assaultive conduct demonstrates an incompetency and/or that knowledge of such an incident could render an employer liable for negligent hiring/ retention would have undesirable ramifications. See Pompey v. Leggett & Platt, Inc., No. 1:09CV1006, 2011 WL 238649, at *13 n.23 (M.D.N.C. Jan. 24, 2011) (unpublished) ("[A]llowing Plaintiff's

negligent . . . retention claim to proceed under these facts effectively would authorize a jury to declare that an employer may not employ persons who at any time in their lives sustained a conviction for any offense that involved the use or threatened use of force. . . . [T]he Court should decline to construe North Carolina law in such a fashion.").

The Court thus should grant summary judgment for the City of Rockingham on Plaintiff's negligent hiring/retention claim.

## VI. Punitive Damages

Finally, Plaintiff's Amended Complaint seeks "to recover from the [D]efendants, other than the City [of Rockingham], punitive damages in an amount in the discretion of the jury" (Docket Entry 25 at 23) for Plaintiff's constitutional claims under 42 U.S.C. § 1983 and state law assault and battery claims (see id. ¶¶ 32, 47, 52). Defendants' Brief in support of its Motion for Summary Judgment contends that the Court should rule, as a matter of law, that Plaintiff may not recover punitive damages. (See Docket Entry 69 at 20.)

In this regard, Defendants note that a jury may award punitive damages in connection with a Section 1983 claim only where the conduct "'involves reckless or callous indifference to the federally protected rights of others, as well as for conduct motivated by evil intent.'" (Id. (quoting Cooper v. Dyke, 814 F.2d 941, 948 (4th Cir. 1987) (internal quotation marks and citation

-30-

omitted).) With respect to Plaintiff's state law claims, Defendants argue that "N.C. Gen. Stat. § 1D-15 provides that in order to recover punitive damages in North Carolina, a plaintiff must prove *by clear and convincing evidence* that the wrongful conduct was accompanied by fraud, malice or willful or wanton conduct." (<u>Id.</u> (emphasis in original).) Defendants go on to assert that, "[n]o wrongful conduct, let alone conduct of this nature, has been forecasted in this case." (<u>Id.</u>)

Defendants' argument again appears to rely on Officer Lugabihl's recounting of the relevant events. Defendants do not develop any argument showing that punitive damages would be inappropriate if a fact-finder accepted Plaintiff's account, as this Court must do at the summary judgment stage. (<u>See</u> Docket Entry 69.) Given the existence of a factual dispute regarding the events that occurred in the magistrate's office, the Court should not attempt to determine, as a matter of law, whether Officer Lugabihl's actions involved "reckless or callous indifference" to Plaintiff's constitutional rights, <u>Cooper</u>, 814 F.2d at 948, or "[w]illful or wanton conduct," N.C. Gen. Stat. § 1D-15. Accordingly, no grounds exist to award summary judgment to Defendants on Plaintiff's request for punitive damages.

## VII. Conclusion

Due to critical distinctions in the witness accounts of the events that occurred at the magistrate's office, as well as

Plaintiff's provision of some medical evidence showing an injury consistent with her testimony, resolution of Plaintiff's claim for excessive force under Section 1983 against Officer Lugabihl in his individual capacity (including as to the availability of punitive damages) requires credibility determinations and the weighing of evidence that make summary judgment inappropriate. Plaintiff's claims for assault and battery (and related requests for punitive damages) necessarily depend on this same fact-finding. Moreover, the only evidence on the record shows that the City of Rockingham waived (at least to some extent) its governmental immunity with respect to Plaintiff's claims for assault and battery. As a result, the Court should allow Plaintiff to proceed on such claims against Officer Lugabihl and against the City of Rockingham on the theory of respondeat superior. Plaintiff, however, has failed to create a genuine issue of material fact that an official policy or custom of the City of Rockingham caused any constitutional violation or that the City of Rockingham negligently hired or retained Officer Lugabihl. Finally, Plaintiff has abandoned all other claims against Defendants in her Amended Complaint.

**IT IS THEREFORE RECOMMENDED** that Plaintiff's Second Claim for Relief ("Deprivation of Civil Rights under 42 U.S.C. § 1983 to be Free from Malicious and Wrongful Prosecution Against the Defendant Lugabihl in his Individual Capacity"), Seventh Claim for Relief ("Malicious Prosecution Against Police Defendants"), Eighth Claim

-32-

for Relief ("False Arrest Against Police Defendants"), and Ninth Claim for Relief ("Intentional Infliction of Emotional Distress Against Police Defendants") be dismissed with prejudice pursuant to Fed. R. Civ. P. 41(a)(2).

**IT IS FURTHER RECOMMENDED** that Defendants' Motion for Summary Judgment (Docket Entry 68) be granted in part and denied in part in that the Court should enter judgment as a matter of law against Plaintiff on her Third Claim for Relief ("Deprivation of Civil Rights under 42 U.S.C. § 1983 Against Defendant City of Rockingham and Defendant Lugabihl in his Official Capacity") and her Sixth Claim for Relief ("Negligent Hiring and Retention Against Defendant City of Rockingham"), but should decline to enter summary judgment with respect to Plaintiff's First Claim for Relief ("Deprivation of Civil Rights under 42 U.S.C. § 1983 to be Free from Excessive Force Against the Defendant Lugabihl in his Individual Capacity"), Fourth Claim for Relief ("Assault Against Police Defendants"), Fifth Claim for Relief ("Battery Against Police Defendants"), and related requests for punitive damages.


/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**


Date:  March 13, 2012